UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLARE MILNE, an individual, by and through MICHAEL JOSEPH COYNE, her RECEIVER, and DISNEY ENTERPRISES, INC.,<br><br>Plaintiffs,<br><br>vs.<br><br>STEPHEN SLESINGER, INC.,<br><br>Defendant.<br><br>───────────────────<br><br>STEPHEN SLESINGER, INC.,,<br><br>Counter-Claimant,<br><br>vs.<br><br>DISNEY ENTERPRISES, INC.; THE WALT DISNEY COMPANY; and WALT DISNEY PRODUCTIONS,<br><br>Counter-Defendants. | Case No. 2:02-cv-08508-FMC-PLAx<br><br>ORDER GRANTING COUNTER-DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br>AND<br>ORDER DENYING COUNTER-CLAIMANT'S MOTION FOR SUMMARY ADJUDICATION |

The matter is before the Court on the following cross-motions for summary judgment, both of which were filed on July 6, 2009: Defendant and Counter-claimant Stephen Slesinger, Inc's Motion for Summary Adjudication of First,

Second and Third Counterclaims (docket no. 524),[1] and Counter-defendants Disney Enterprises, Inc., the Walt Disney Company, and Walt Disney Productions' Motion for Summary Judgment on SSI's Counterclaims or, in the alternative, for Summary Adjudication (docket no. 525).[2] The Court has read and considered the moving, opposing, and reply documents, as well as the extensive supplemental briefing and exhibits, submitted in connection with these motions. The Court deems the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; Local Rule 7-15. For the reasons and in the manner set forth below Disney's Motion (docket no. 525) is GRANTED, and SSI's Motion (docket no. 524) is DENIED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 18, 2009, this Court issued an Order granting Summary Adjudication in favor of Disney on SSI's counterclaims for breach of contract, bad faith, fraud, and declaratory relief. At issue before the Court now is Disney's Motion for Summary Judgment or Summary Adjudication of the remaining counter-claims for copyright infringement, trademark infringement, trade dress infringement, and violation of California Business and Professions Code section 17200. The Court also considers and rules on SSI's pending Motion for Summary Adjudication of its First, Second, and Third Counterclaims for copyright, trademark , and trade dress infringement, respectively.

The parties are familiar with the extensive procedural history of this litigation, which will not be detailed here. However, it is significant for purposes of this Order to record that for some 13 years, the parties litigated in Superior Court over SSI's assertion of its right to royalties from Disney arising out of the exploitation of merchandising and other rights in the Winnie the Pooh characters. In 2005, SSI's Superior Court lawsuit was dismissed as a sanction, which

---

[1] For purposes of this Order, the Court refers to Stephen Slesinger, Inc. as "SSI."

[2] The Court refers to Counter-Defendants as "Disney."

1  dismissal was ultimately upheld by the California Court of Appeal.

2  After the Superior Court royalty lawsuit was dismissed, in 2006, SSI filed a Fourth Amended Counterclaim in this federal action, alleging for the first time that Disney's exploitation of the Pooh characters infringed on SSI's trade marks and copyrights. Disney puts forth two main contentions in its Motion: First, that SSI granted to Disney all of the rights it had in the Pooh characters, and retained no rights which Disney could infringe, and second, that SSI's counterclaims are inconsistent with its earlier position in the Superior Court action that Disney's uses of the Pooh characters were authorized and royalty-producing. The Court agrees with both propositions. At the same time, SSI seeks summary adjudication of its first three counterclaims on the basis of misconduct for which Disney was sanctioned in the related state court proceedings.

**A. The Parties' Agreements**

The SSI-Disney relationship has spanned the course of over four decades and has involved multiple contractual agreements and/or grants of rights. Before turning to consider the merits of the parties' cross-motions, the Court summarizes the relevant provisions of the pertinent agreements here..

*1. 1930 Agreement:*

By an agreement entered into in 1930, British author A.A. Milne ("Milne") granted to Stephen Slesinger ("Slesinger"), in exchange for royalties, the sole and exclusive "right, license and privilege...in the [four] works of the Author...including the right to use the same in and for the purpose of advertising publicity and otherwise" except for use in books, pamphlets, magazines or periodicals. SSI Mot., Ex 1.

*2. 1932 Agreement:*

With a 1932 amendment to the 1930 Agreement, Milne granted to Slesinger rights to present and/or future "radio reproduction, representation, broadcasting and/or the like, as they exist or may exist . . . or any adaptation or

3

variation or extension thereof, or other mechanical sound, word and/or picture representation (or any combination thereof) such as any broadcasting or representational device, wire, television, or other mechanical instrument or devices or of any such future similar or allied devices."  SSI, Ex 4.

### 3. *1961 Agreement:*

As a result of the early Milne-Slesinger Agreements, Slesinger acquired from Milne, and SSI "subsequently acquired and now owns [subject to the rights of Milne] the sole and exclusive radio and television rights in the United States and Canada in and to said 'work.' "  By virtue of those same agreements (*i.e.,* the 1930 and 1932 agreements), Slesinger acquired "various further rights in and to said 'work'. . . that said further rights include the exclusive right in the United States and Canada to use, or license the use of, the characters and illustrations from said 'work' in, on or in connection with various articles of merchandise; that all of said further rights have also been duly acquired by and are now owned by [SSI]."[3]

By an agreement entered into in 1961, SSI assigned, granted, and set over to Disney "the sole and exclusive rights" to broadcast by motion picture, television, radio, or analogous media, shows based on the work:  "Seller hereby assigns, grants, and sets over unto the purchaser *all of the further rights in and to said work'* which are set forth in Paragraph 3 hereof..."  Disney, Ex. 1 (emphasis added).  The contract then proceeds to establish royalties payable to SSI in exchange for such  grant.  *Id.*

### 4. *The 1983 Agreement:*

---

[3] Slesinger duly formed and organized a corporation known as Stephen Slesinger, Inc. ("SSI").

4

1    A subsequent agreement, executed in April 1, 1983 ("1983 Agreement"),
2    acknowledges that SSI got certain rights from Milne and "*assigned those rights it*
3    *had acquired from A.A. Milne to Disney by agreement dated 14 June 1961.*"
4    Disney, Ex. 2 (emphasis added).

5    In the 1983 Agreement, all earlier agreements are revoked, and the Milne
6    Trustees give SSI "all of the rights in the work which were transferred to
7    [Slesinger] in 1930 and amended from time to time." The 1983 Agreement
8    further provides that SSI "assigns, grants, and sets over unto Disney the sole and
9    exclusive right in the United States and Canada to project, exhibit, and broadcast
10   visually and audibly any motion pictures..." as well as "various further rights in
11   and to said work, which include merchandise..." television, radio, analogous
12   processes. *Id.*

## II. APPLICABLE LEGAL STANDARD

14   Summary judgment is appropriate if there is no genuine issue of material
15   fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ.
16   P. 56(c). The moving party bears the initial responsibility of informing the court
17   of the basis of its motion, and identifying those portions of "'pleadings,
18   depositions, answers to interrogatories, and admissions on file, together with the
19   affidavits, if any,' which it believes demonstrate the absence of a genuine issue of
20   material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed.
21   R. Civ. P. 56(c)). Where the nonmoving party will have the burden of proof at
22   trial, the movant can prevail merely by pointing out that there is an absence of
23   evidence to support the nonmoving party's case. *See id.; see also Nissan Fire &*
24   *Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000) ("In order to
25   carry its burden of production, the moving party must either produce evidence
26   negating an essential element of the nonmoving party's claim or defense or show

5

1  that the nonmoving party does not have enough evidence of an essential element
2  to carry its burden of persuasion at trial."). If the moving party meets its initial
3  burden, the nonmoving party must then set forth, by affidavit or as otherwise
4  provided in Rule 56, "specific facts showing a genuine issue for trial." Fed. R.
5  Civ. P. 56(e)(2); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

6      The substantive law governing a claim determines whether a fact is
7  material. *T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630
8  (9th Cir. 1987); *see also Long v. County of Los Angeles,* 442 F.3d 1178, 1185 (9th
9  Cir. 2006) ("Material facts are those which may affect the outcome of the case.")
10 (internal citations omitted). In judging evidence at the summary judgment stage,
11 the Court does not make credibility determinations or weigh conflicting evidence
12 and draws all reasonable inferences in the light most favorable to the nonmoving
13 party. *T.W. Elec. Serv.*, 809 F.2d at 630-31; *see also Brookside Assocs. v. Rifkin*,
14 49 F.3d 490, 492-93 (9th Cir. 1995). The evidence presented by the parties must
15 be admissible. Fed. R. Civ. P. 56(e)(1). Mere disagreement or the bald assertion
16 that a genuine issue of material fact exists does not preclude the use of summary
17 judgment. *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989).

## III. DISCUSSION

19     As the discussion that follows demonstrates, the determination of the merits
20 of Disney's Motion renders moot SSI's cross-motion for summary adjudication of
21 its copyright, trademark, and trade dress infringement claims.

**A. Contract Interpretation**

23     In spite of SSI's protestations today that "[t]he rights Slesinger obtained
24 from Milne are much broader than the rights Slesinger licensed to Disney in the
25 1983 Agreement," SSI Opp'n at 4, the language of the parties' agreements belies
26 that contention. Significantly, nowhere in its motion papers does SSI identify

precisely what rights it believes it retained. Nor can any such rights be discovered by reading the contracts. SSI received "certain rights" from Milne and "further rights" in later agreements, and granted "those rights it had acquired" to Disney.

Summary Judgment is appropriate where the terms of a contract are clear and unambiguous. The fact that the parties disagree as to their meaning does not alter that result. *See United States v. King Features Entm't, Inc.,* 843 F.2d 394, 398 (9th Cir. 1988) ("Interpretation of a contract is a matter of law, including whether the contract is ambiguous." (citing *Beck Park Apts. V. United States Dept of Housing,* 695 F.2d 366, 369 (9th Cir. 1982)). Here, the unambiguous nature of the contracts is strongly supported by the conduct of the parties over the nearly 50 years of their relationship. Both parties have treated the agreements as constituting a transfer from SSI to Disney of ==all== of SSI's interests in the Pooh characters, entitling SSI to royalties for all uses. Such a lengthy period of consistent behavior is powerful evidence of SSI's intentions. *See Employers Reins.Co. V. Superior Court,* 161 Cal.App.4th 906, 920-21 (2008) (" 'The conduct of the parties after execution of the contract and before any controversy has arisen as to its effect affords the most reliable evidence of the parties' intentions.' " (quoting *Kennecott Corp. v. Union Oil Co.*, 196 Cal.App.3d 1179, 1189 (1987)).

Although SSI now claims copyright and trademark rights in the works, no evidence has been offered that SSI ever attempted to perfect or register any such rights, prior to the filing of these counterclaims. Disney, on the other hand, registered at least 15 trademarks based on the Pooh works in the United States,

7

between 1983 and 2006.[4] In 2004, Disney registered copyrights in 45 works featuring Pooh characters, and renewed copyright registrations for another 14 such works. SSI never objected to those registrations until 2006, when the state action for breach of the royal agreement was dismissed, and these counter-claims were filed.

The Court is satisfied that under the clear terms of the parties' agreements, SSI transferred all of its rights in the Pooh works to Disney, and may not now claim infringement of any retained rights. Disney's Motion for Summary Adjudication of the first, second, third, and tenth counterclaims is granted; and SSI's cross-motion for summary adjudication of the first, second, and third counterclaims is denied.

**B. Judicial Estoppel**

Not only are SSI's counterclaims unsupported by the language of the contracts, they are inconsistent with statements made and positions taken by SSI in the state court litigation. In numerous documents filed in the Superior Court, SSI has insisted that Disney's uses of the works were derived from the SSI grants of "all" rights to sound, word, picture representation, television, any representational device, similar or allied devices, videocassettes, promotion and advertising in all media, exploitation and licensing in all media. SSI Opp'n, Ex. 54; SSI Mot. for Summ. J'mt, Ex. 59; Supplemented Third Amended Complaint ("Supp. TAC"), Ex 6.

Specifically, SSI's state court Supplemented Third Amended Complaint alleges: In the 1983 agreement, "Slesinger made a new grant of those rights to Disney. . . . The rights granted Disney by Slesinger in the 1983 Agreement

---

[4] SSI's objections to the competence and provenance of the trademark registrations is overruled.

included rights Slesinger had not granted to Disney in 1961. . . . Slesinger . . . turned over its valuable rights to Disney for exploitation by Disney in exchange for a share of the receipts from exploitation of the Pooh characters. Supp. TAC ¶¶ 5, 7, 8; *Id.*, Ex 6. Additionally, in a Brief filed by SSI in the Superior Court, SSI explained: "In the 1983 agreement all parties acknowledged that SSI was the sole owner of all rights acquired under the 1930 Agreement as amended. In paragraphs 7 and 8, SSI regranted, licensed and assigned all rights acquired rights [sic] to Disney." Disney, Ex 14 at 5. Finally, in response to an Interrogatory in the state court proceeding, which asked SSI to identify the "further rights" Disney received in the 1983 agreement, SSI responded: "the grant of all 'further rights' in and to the Pooh Characters . . . is a catch-all designed to ensure that Slesinger was granting . . . all of the additional commercial exploitation rights Slesinger acquired that are not specifically mentioned in the 1983 Agreement." Seto Decl., Ex. F at 306.

     Disney offers the doctrine of judicial estoppel as a basis for granting summary adjudication of SSI's remaining counterclaims. "Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d. 778, 782 (9th Cir. 2001). The doctrine is not a perfect fit with this case, because SSI did not prevail in its earlier litigation. Whether it would have succeeded in persuading a jury that it was entitled to greater royalties under its contract will never be known, because the matter did not proceed to trial. Nonetheless, SSI vigorously pursued its royalty claims for some 13 years, in an effort to persuade the Court that Disney's uses of the works were royalty-producing.

     Judicial estoppel is an equitable doctrine which has been recognized where

necessary to preserve the "orderly administration of justice" and out of regard for "the dignity of judicial proceedings." It serves to "protect against a litigant playing fast and loose with the courts." *See Russell v. Rolfs,* 893 F.2d. 1033, 1037 (9th Cir. 1990). Of particular significance to this case is the observation of the Court in *Hamilton*: "Estoppel is even more appropriate where the incompatible statements are made in two different cases, since 'inconsistent positions in different suits are much harder to justify' than inconsistent pleadings within one suit." *Hamilton*, 270 F.3d. at 783 (quoting *Astor Chauffeured Limousine Co. v. Runnfeldt Investment Corp.,* 910 F.2d. 1540, 1548 (7th Cir. 1990)). The factors which "typically inform the decision whether to apply the doctrine in a particular case," including whether the party succeeded in persuading a court to accept its earlier position, are not "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." *New Hampshire v. Maine,* 532 U.S. 742, 121 S.Ct. 1808, 1815, 149 L.Ed.2d. 968 (2001). Therefore, even if a party was not successful in the prior proceeding, judicial estoppel will apply if a court finds its integrity was undermined by the party's inconsistent positions. *See Krystal Cadillac-Oldsmobile GMC Truck, Inc. V. General Motors Corp.,* 337 F.3d. 314, 324 (3rd Cir. 2003); *Ryan Operations G.P. v. Santiam Midwest Lumber Co.,* 81 F.3d. 355, 362 (3rd Cir. 1996).

    Here, SSI's conduct demonstrates a blatant effort to salvage its lawsuit against Disney by an taking entirely inapposite and inconsistent posture in this case. Between 2003 and 2006, it filed three counterclaims against Disney in this action. None ever made reference to copyright, trade mark or trade dress. The issue only arose after SSI could no longer proceed with its breach of contract claims. Accordingly, the summary adjudication of the first, second, and third counterclaims in Disney's favor is also warranted on the basis of judicial

1  estoppel.

2  **C. Unfair Business Practices Claim**

3  SSI's twelfth counterclaim alleges a violation of California Business & Professions Code section 17200 and Unfair Competition. SSI alleges that Disney induced Hunt and Coyne to serve termination notices on Slesinger and to enter into reversion agreements with Milne and Hunt. The counterclaim asks the Court to use its equitable powers to declare invalid the grant of rights to Disney in the 1983 Agreement.

In order for Disney's conduct to be a violation of §17200 and tantamount to unfair competition, SSI must establish some unlawful conduct on Disney's part. *See Smith v. State Farm Mutual Auto Ins. Co.,* 93 Cal.App.4th 700, 717-18 (2001) Although the statute refers to protection against "unfair" competition, the law does not provide a legal remedy for conduct which is unfair but not unlawful.

Assuming that Disney persuaded Milne and Hunt to serve termination notices on Slesinger, no law was violated. Ultimately, the termination notices were deemed invalid, based on the timing of their delivery, but the service of the termination notices was not unlawful.

SSI contends that this Court has already ruled on this claim in its favor. That overstates the condition of the record. The Court denied a Motion to Dismiss the claim, finding that SSI might be able to establish such a claim. The problem is that it has not done so. No evidence has been offered which raises a triable issue of fact as to this claim. SSI's unspecified speculation that with further discovery, it could uncover such evidence does not justify a continuance of this very old case.

Accordingly, Disney's Motion to Dismiss the twelfth counterclaim is granted.

11

## IV. CONCLUSION

Therefore, Disney's Motion for Summary Judgment on SSI's Counterclaims (docket no. 525) is GRANTED, and SSI's Motion for Summary Adjudication of First, Second and Third Counterclaims (docket no. 524) is DENIED. Disney is directed to provide the Court with a Judgment for its signature.

**IT IS SO ORDERED.**

Dated: September 25, 2009.

FLORENCE-MARIE COOPER, JUDGE
UNITED STATES DISTRICT COURT